UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

      - against -

KAIAM DONOVAN,

            Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

20-CR-374 (PKC)

PAMELA K. CHEN, United States District Judge:

Trial of Defendant Kaiam Donovan is scheduled to begin with jury selection on January 3, 2022.  Now before the Court are the parties' motions *in limine* requesting that the Court exclude or allow certain evidence at trial.  For the reasons discussed below, the parties' motions are granted in part and denied in part.

## BACKGROUND

On October 16, 2020, Defendant was arraigned on a two-count indictment charging him with one count of conspiring to distribute and possess with intent to distribute cocaine base, and one count of distributing and possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, respectively.  (Indictment, Dkt. 3.)  On October 22, 2021, a grand jury returned a Superseding Indictment that no longer contained a conspiracy charge and instead contained three separate substantive cocaine distribution charges, each on a different date: March 27, 2020; May 12, 2020; and May 20, 2020.  (S-1 Indictment, Dkt. 50.)  The Government represents that it has, *inter alia*, video recordings of the alleged transactions and laboratory reports confirming the identity and weight of the substances Defendant sold to an undercover officer (UC102) on the charged dates.  (*See* Complaint & Search Warrant Application, Dkt. 1, ¶ 9; *see also* Dkts. 13, 24.)

1

On December 13, 2021, Defendant filed two motions *in limine* to exclude certain evidence offered by the Government.  (*See* Defendant's Motion *in Limine* ("Def. Br."), Dkt. 77; Motion to Exclude Expert Testimony, Dkt. 78).  The same day, the Government moved *in limine* to be permitted to introduce certain evidence.  (*See* Government's Motion *in Limine* ("Gov. Br."), Dkt. 83.)

On December 15, 2021, the Court held a pretrial conference ("PTC") where, among other things, it ruled on several of the parties' motions, and reserved ruling on others.  (*See* 12/15/2021 Minute Entry.)  The Court directed the parties to submit supplemental briefs regarding outstanding evidentiary requests.  (*See id.*)  On December 20, 2021, the parties submitted their additional briefs. (*See* Defendant's Supplemental Brief ("Def. Supp. Br."), Dkt. 89; Government's Supplemental Brief ("Gov. Supp. Br."), Dkt. 90.)  The Court now considers the remaining evidentiary matters.

## LEGAL STANDARD

"Evidence is relevant if[] (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.[1]  Relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court say otherwise.  Fed. R. Evid. 402.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

---

[1] Unless otherwise noted, all legal citations in this Memorandum and Order omit any internal quotation marks, citations, and alterations.

"[D]istrict courts enjoy broad discretion over the admission of evidence." *United States v. Delgado*, 971 F.3d 144, 153 (2d Cir. 2020). "A district court abuses its discretion when it acts arbitrarily or irrationally, or premises its decision on an error of law." *United States v. Walker*, 974 F.3d 193, 203 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2823 (2021).

## DISCUSSION

### I.      Uncharged Drug Transactions

#### A.      Legal Standard – Other Acts

Under Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Even so, "[t]he Second Circuit's inclusionary rule allows the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Lyle*, 919 F.3d 716, 736 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 846 (2020).

Not all evidence of uncharged misconduct constitutes other crimes evidence for purposes of Rule 404(b). *See id.* "Rather, evidence of uncharged criminal activity is not considered other crimes evidence if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Id.*

#### B.      The Court Declines to Admit Evidence of Uncharged Drug Transactions

The Government seeks to introduce evidence of Defendant's alleged involvement in uncharged drug transactions with (1) UC102, and (2) other people.

1.   Uncharged Transactions with UC102

The Government argues that "evidence of [Defendant's] uncharged cocaine sales to UC102 is admissible as direct evidence of the charged conduct" because both the charged and uncharged transactions "occurred during a short four-month window of time[,] . . . occurred in the same general location," and involved Defendant selling to UC102 in UC102's car after Defendant and UC102 exchanged text messages.  (Gov. Br., Dkt. 83, at 26.)  The Government also contends that the uncharged transactions with UC102 are "inextricably intertwined with the charged sales" and are "necessary to complete the story" because some uncharged sales occurred in between the charged transactions, and, on those occasions, Defendant discussed future transactions with UC102.  (*Id.*)  The Government posits that this evidence will help "avoid jury confusion."  (*Id.*)

The Court disagrees.  First, although the Government initially charged Defendant with a drug-related conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846 (*see* Indictment, Dkt. 3), it has since dropped the conspiracy charge and replaced it, in the superseding S-1 Indictment, with "three separate substantive distribution charges, each on a different date" (*see* S-1 Indictment, Dkt. 50).  *United States v. Donovan*, No. 20-CR-374 (PKC), 2021 WL 5819915, at *1 (E.D.N.Y. Dec. 6, 2021).  The Government has not explained how uncharged drug transactions on different dates are "direct evidence" of the charged sales, simply because the charged and uncharged transactions occurred in similar circumstances during a four-month window.  Many businesses, lawful or otherwise, sell the same product to the same customers repeatedly (*e.g.*, coffee shops).  Each sale is not part of one extended transaction or a single "series."  *Cf. United States v. Williams*, No. 13-CR-419 (DLI), 2016 WL 4536864, at *6 (E.D.N.Y. Aug. 30, 2016) (concluding that the defendant's conversations concerning his possession of a firearm and drug sales were "direct evidence of the crimes charged" because, unlike here, they "occurred during the period of the charged *conspiracy*" (emphasis added)).

4

Nor are the uncharged sales here "inextricably intertwined" with the charged sales. The Government alleges that Defendant sold cocaine to UC102 on three occasions, which are captured on video. The charged sales are straightforward, and the jury does not need to hear about additional uncharged sales to understand the evidence directly relating to them, which includes video recordings, text messages, and laboratory reports. *See United States v. Martoma*, No. 12-CR-973 (PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) ("Courts have not found charged and uncharged conduct inextricably intertwined where the charged crimes are straightforward and may be fully understood without reference to the uncharged conduct."). That some of the alleged uncharged transactions occurred "in between" the charged transactions is immaterial; it merely reflects the transactions the Government chose to charge and those it did not.

The Government also fails to explain how the uncharged sales are "necessary to complete the story" of the charged transactions. The "story" of the charged transactions is that, on three occasions, Defendant sold cocaine to UC102. As noted, Defendant is not charged with a conspiracy or a continuing course of conduct. *Cf. United States v. Newton*, No. 01-CR-635 (CSH), 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002) ("While the proffered evidence may tend to show that [the defendant] was engaged in a *pattern* of activity . . . , knowledge of that activity does not assist in understanding the charged crimes."). Evidence of additional discrete, uncharged transactions on different dates from those alleged in the S-1 Indictment, that do not have clear video corroboration, is hardly necessary to *clarify* the case for the jury. *Cf. id.* ("The fact that [the defendant] may have committed similar fraudulent acts in close temporal proximity to the charged crimes furnishes an element of context, but it is certainly not crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed."). If anything, such evidence is likely to confuse the jury about why the Government is attempting to prove

5

additional interspersed transactions when the jury has been asked to determine Defendant's guilt as to a specific three.  In any event, the Government chose to charge three discrete transactions. That those alleged drug sales resemble other alleged drug sales reflects the nature of the drug trafficking business; it does not, however, "inextricably intertwine" the transactions.

Finally, the Government argues that evidence of these other alleged transactions is admissible under Rule 404(b) insofar as it "show[s] that [Defendant] had the requisite knowledge and intent to sell to UC102 on the charged dates because his sales were not a one-time occurrence," and that Defendant "had a common plan."  (Gov. Br., Dkt. 83, at 27.)  The Government also contends that such evidence would undercut any defense that Defendant believed he was selling sham drugs, *i.e.*, baking soda, rather than cocaine.  (*Id.*)

The Court is unconvinced.  Whether Defendant had the knowledge and intent to sell to UC102 on the charged dates, to the extent knowledge and intent are in dispute, is sufficiently evidenced by the three videos of Defendant selling to UC102 on the charged dates.  These three transactions in themselves also show that Defendant's sales "were not a one-time occurrence." Evidence of the additional, uncharged transactions would be "more of the same."  *See United States v. Oldman*, 979 F.3d 1234, 1251 (10th Cir. 2020) ("Considering whether to admit 'more of the same' is a judgment call best made by the trial judge.").  Further, the Government is being permitted to introduce evidence of drug paraphernalia found at Defendant's residence, which also tends to show that Defendant knew he was selling, and intended to sell, cocaine during the charged sales.

The Government also fails to explain how the additional transactions would rebut an argument that Defendant either wittingly or unwittingly sold sham drugs on the charged occasions. If the laboratory results from the three charged sales confirm that the substance Defendant sold

was cocaine, that evidence will rebut any argument that what Defendant sold the undercover officers was, in fact, sham drugs. And regarding whether Defendant believed or knew he was selling cocaine (versus baking soda) during the charged sales, evidence that he sold cocaine on other occasions to UC102 does little to prove that knowledge or intent; a drug dealer obviously could sell real drugs on one occasion and sham drugs on another. Indeed, the fact that two of the charged sales were to the same undercover officer, in itself, provides the Government with a ready counterargument to a sham-drug defense: the undercover officer would not have sought to buy drugs again from Defendant had Defendant sold the officer sham drugs the first time. Further, if Defendant argues that the laboratory results for the charged drug sales are corrupt, then the results from the uncharged transactions are just as likely to be corrupt, and thus the evidence of uncharged sales does nothing to rebut Defendant's sham-drugs argument.

Lastly, the Government's proposed evidence regarding Defendant's uncharged sales to UC102 creates a substantial risk of unfair prejudice that substantially outweighs its potential probative value. *See* Fed. R. Evid. 403. Based on this other acts evidence, the jury is likely to improperly infer Defendant's propensity to engage in drug trafficking, *i.e.*, because Defendant committed this same crime on other occasions, he must have committed it on the occasions charged in the Indictment. Thus, the Court declines to allow the Government to introduce evidence of Defendant's alleged uncharged drug transactions with UC102.

### 2.    Uncharged Transactions with Others

The Government also seeks to introduce evidence that Defendant arranged and carried out uncharged drug sales with people other than UC102. (Gov. Br., Dkt. 83, at 28–30.) The Government argues that this evidence will help (1) show that Defendant sold cocaine on the charged occasions, (2) establish his knowledge of the drug trade, and (3) rebut any argument that Defendant sold powder cocaine, but the government agents "turned it into" crack cocaine. (*Id.*)

The Court declines to admit this evidence.  First, the videos and laboratory results will show whether Defendant sold cocaine on the charged occasions; evidence that Defendant sold cocaine on other occasions would be needlessly cumulative.  *See* Fed. R. Evid. 403.  Second, the danger of an improper propensity inference substantially outweighs any marginal added value that this other acts evidence might provide.  *Id.*  In fact, the Government admits that it seeks to introduce this evidence precisely to "show[] [that Defendant] was deeply and continuously involved in drug trafficking."  (Gov. Br., Dkt. 83, at 29.)  Further, as discussed, evidence of Defendant's possession of drug paraphernalia, which the Government is being permitted to introduce, likely will establish his knowledge of the drug trade.  Third, whether government agents "turned" the powder cocaine Defendant sold them into crack cocaine is irrelevant to this case, since the S-1 Indictment charges Defendant with selling cocaine and not cocaine base (*i.e.*, crack cocaine) (*see* S-1 Indictment, Dkt. 59, ¶¶ 1–3), and thus an argument that Defendant sold powder rather than crack cocaine would be no defense at all.  At the same time, evidence of Defendant's other drug trafficking activities would unfairly prejudice Defendant by showing his propensity to sell drugs.

Thus, the Court declines to allow the Government to introduce evidence of Defendant's alleged uncharged drug transactions with people other than UC102.

## II.   Backpack Seized from Woodside Apartment

Defendant seeks to introduce the backpack seized from his alleged residence in Woodside, Queens, and the contents, including the Honduran passport of another individual and drug paraphernalia.  Defendant's request is granted.

As discussed at the PTC, the Government is being allowed to introduce other items seized from the Woodside apartment, in part, to show that Defendant lived at that address.  Because the backpack and its contents may be relevant to the issue of who resided in, had control of, or used

the apartment where the drug paraphernalia was found, the defense should be permitted to introduce that evidence to argue that that paraphernalia belonged to someone other than Defendant.

## III.  Recorded Jail Phone Calls

### A.  Legal Standard – Admissibility of Defendant's Recorded Jail Phone Calls

Under the federal rules of evidence, a party may introduce the statement of an opposing party against it as non-hearsay.  *See* Fed. R. Evid. 801(d)(2); *see also United States v. Ho*, 984 F.3d 191, 208 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2862 (2021).  But "the fact that a hearsay statement falls within an exception," or that a statement is non-hearsay, "does not make the statement admissible."  *United States v. Gupta*, 747 F.3d 111, 139 (2d Cir. 2014).  The statement "must meet the requirements of, *inter alia*, relevance, and it must not be excludable on the grounds of undue confusion or prejudice under Rule 403."  *Id.*  Courts frequently allow the government to introduce statements by defendants made during recorded jail phone calls.  *See, e.g.*, *United States v. Goolsby*, 820 F. App'x 47, 50 (2d Cir. 2020) (summary order) ("The recorded phone calls Goolsby made to Henry from jail provide additional circumstantial evidence."), *cert. denied*, 141 S. Ct. 2818, (2021); *United States v. Dowdell*, 737 F. App'x 577, 581 (2d Cir. 2018) (summary order) ("[T]he government played recordings of [the defendant's] phone calls from jail to his parents, in which he suggested that the government had sufficient evidence to convict him."); *United States v. Dozier*, 492 F. App'x 205, 207 (2d Cir. 2012) (summary order) ("The evidence presented at trial included . . . physical evidence from the undercover drug purchases, audio and video recordings of the undercover drug purchases, and recorded phone calls made by [the defendant] from a federal jail.").

"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  "The

purpose of the rule is to correct, contemporaneously, the misleading impression created by taking matters out of context, and the rule requires generally that adversaries be allowed to prevent omissions that render matters in evidence misleading." *United States v. Williams*, 930 F.3d 44, 58–59 (2d Cir. 2019), *cert. denied sub nom. Williams v. United States.*, 141 S. Ct. 2816 (2021). "The completeness doctrine, however, has never required the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Id.* "And ultimately, it is for the district court, in its discretion, to determine if the rule applies." *Id.*

### B.   The Government May Introduce Defendant's Recorded Jail Phone Calls, and Defendant May Complete Those Statements

The Government seeks to introduce certain statements that Defendant made during recorded phone calls while incarcerated at the Metropolitan Detention Center in this case. (*See* Gov. Br., Dkt. 83, 10–13.) Defendant objects to the admission of three of the statements, and requests to introduce surrounding language to complete two of the statements. (*See* Def. Supp. Br., Dkt. 89, at ECF[2] 1–2.)[3]

First, Defendant argues that, if the Government is permitted to introduce his statement that "[t]hey took whatever -- look, long story short, they took the coke that I gave them and turned it into crack," he should be permitted to introduce the surrounding sentences, so the statement reads as follows:

> Because she's gonna be able to pinpoint that.  I wanna be able to pinpoint that because that's a fabrication and falsification of evidence.  They took whatever -- look, long story short, they took the coke that I gave them and turned it into crack

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] With respect to recorded jail call excerpts as to which Defendant has not objected, the Court has reviewed them and determined that they are admissible under Rule 801(d)(2), and not unfairly prejudicial.

and then they tried to charge me with crack because crack doesn't mold to their charge in coke.

(Dkt. 83-1, at ECF 2; Def. Supp. Br., Dkt. 89, at ECF 1.)  Defendant's request is granted.  While it is unclear whether the sentence Defendant seeks to add—referencing "fabrication and falsification of evidence"—relates to the incriminating statement the Government seeks to admit— "they took the coke that I gave them and turned it into crack"—or to something Defendant had discussed earlier in the conversation, which he vaguely refers to as "it" (Dkt. 83-1, at ECF 2, l. 3 ("I'm gonna highlight it.")), Defendant should be permitted to argue to the jury that the seemingly incriminating statement has an alternate meaning based on the preceding sentence.  In other words, the surrounding language "in fairness ought to be considered at the same time" as the statement the Government seeks to introduce.  *See* Fed. R. Evid. 106.

Second, Defendant requests that if the Court admits his statement that "they sent these confidential informants and people at me and they got me.  They got me -- they know they got me to commit things," as the Government requests, the surrounding language also should be introduced, so that the statement would read: "Now they trying to -- they sent these confidential informants and people at me and they got me.  They got me -- they know they got me to commit things but they trying to frame it to the point where it's something that I didn't do."  (Dkt. 81-2; Def. Supp. Br., Dkt. 89, at ECF 1.)  Again, the surrounding language "in fairness ought to be considered at the same time" as the Government's excerpted statements.  Here, the Government seeks to exclude half of the final sentence, which plainly provides important context to the rest of the sentence.[4]

---

[4] The Court understands that the Government likely views the excised portion as relating only to Defendant's arguably irrelevant theory that government agents purchased only cocaine from Defendant and then cooked it into crack.  Nonetheless, the defense should be permitted to argue its interpretation of that portion of the call based on the complete context.

Third, Defendant asks the Court to exclude his statement that "you know I'm predisposed to be committing crimes, but yet you still send a confidential informant to me to commit a crime." (Dkt. 83-27; Def. Supp. Br., Dkt. 89, at ECF 1.)  This request is granted.  This statement, while minimally probative of criminal intent—since it appears to be a reference to one of the Government's potential legal theories in this case (*i.e.*, Defendant's "predisposition" to commit the charged crime as undermining an entrapment defense), as opposed to an admission of such predisposition—is likely to have an unduly prejudicial effect and create an unfair inference of criminal propensity.  *See* Fed. R. Evid. 403; Fed. R. Evid. 404.

Fourth, Defendant asks the Court to exclude the following exchange with his mother: DEFENDANT: "Fuck outta here, man." DEFENDANT'S MOTHER: "Um-hum." DEFENDANT: "I'm screaming -- play this 'cause I don't give a fuck.  They can play this shit in court."  (Dkt. 83-3; Def. Supp. Br., Dkt. 89, at ECF 1.)  Defendant argues that these lines "are ambiguous and inflammatory" and should be excluded under Rule 403.  (Def. Supp. Br., Dkt. 89, at ECF 1.)  The Court agrees.  These statements do not constitute admissions of guilt or otherwise offer support to the Government's theory of the case, but are likely to be inflammatory.

Fifth, Defendant asks the Court to exclude the following statement: "Now, I accept the responsibility for what I did.  As far as coke, yes, and only on certain occasions, not all these occasions that they saying I did."  (Dkt. 81-6; Def. Supp. Br., Dkt. 89, at ECF 2.)  If this line is admitted, Defendant requests that the following sentences be admitted also: "So I'm willing to man up and accept my guilt because I know what I did, but they tryna[,] . . . they tryna, like, exaggerate it, you know what I'm saying.  They dealing with extra shit."  (Dkt. 81-6; Def. Supp. Br., Dkt. 89, at ECF 2.)  The Court will allow the Government to introduce Defendant's statement, but will not allow Defendant to admit the additional exculpatory statements about the Government

12

purportedly "exaggerating" and "dealing with extra shit."  The statement to be admitted by the Government already includes a similar disclaimer, and permitting Defendant to reiterate and expand on his exculpatory claims in different and more vague terms would result in Defendant improperly using Rule 801(d)(2) to introduce purely self-serving statements.

## IV.   Defendant's Alleged Flight from Law Enforcement

### A.   Legal Standard – Flight

"Evidence of a party's consciousness of guilt may be relevant if reasonable inferences can be drawn from it and if the evidence is probative of guilt."  *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004).  "Such evidence is admissible if the court (1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3) provides an appropriate instruction to the jury as to the limited purposes for which the evidence is introduced, if a limiting instruction is requested."  *Id.*

"[F]light can, in some circumstances, evidence consciousness of guilt."  *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005).  "Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn:" (1) "from the defendant's behavior to flight;" (2) "from flight to consciousness of guilt;" (3) "from consciousness of guilt to consciousness of guilt concerning the crime charged;" and (4) "from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  *Id.*

### B.   The Government May Cross-Examine Defendant, If He Testifies, About His Alleged Flight

The Government requests that it "be permitted to cross-examine [Defendant] about his flight should he testify." (Gov. Supp. Br., Dkt. 90, at 6.)  That request is granted, except that this questioning may be subject to limitations based on relevance and undue prejudice at trial.  The

Court will then instruct the jury, if necessary, as to the extent to which it may consider such evidence.  *See Perez*, 387 F.3d at 209.

## V.  Proposed Expert Testimony of Assistant Inspector General Alfred Hernandez

The Government seeks to introduce the testimony of Alfred Hernandez, an Assistant Inspector General, (1) "that the cocaine and cocaine base seized in connection with [Defendant's] arrest was packaged for sale and the approximate street value of the quantity seized," and (2) "that the language employed by [Defendant] in text messages exchanged with an undercover police officer is consistent with that typically employed by narcotics traffickers engaged in drug sales." (Notice of Expert Trial Testimony, Dkt. 54, at 1–2; *see also* Gov. Supp. Br., Dkt. 90, at 6–8.)  The Government also requests that Inspector Hernandez be permitted to testify "about the shortage of cocaine at the height of the pandemic . . . to explain [Defendant's] text messages to UC102 in which [Defendant] references a 'drought' in the supply chain."  (Gov. Supp. Br., Dkt. 90, at 8.)

### A.  Legal Standard – Expert Testimony

#### 1.  Federal Rule of Evidence 702

"The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence."  *United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020). "In considering whether to admit expert testimony under Rule 702, a district court serves a 'gatekeeping role' by 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Id.* at 187–88 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  "Generally, an expert may be permitted to testify if he [or she] is qualified, reliable, and helpful."  *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021) (citing Fed. R. Evid. 702), *cert. denied*, 2021 WL 5869415 (U.S. Dec. 13, 2021).  An expert's testimony is helpful if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  "Of course,

14

courts must also determine whether the proffered evidence is relevant, and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice." *Gatto*, 986 F.3d at 117. "The decision to admit expert testimony is left to the broad discretion of the trial judge . . . ." *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 254 (2d Cir. 2021), *cert. denied*, 2021 WL 5434467 (U.S. Nov. 22, 2021).

### 2.    Law Enforcement Experts

"The principles pertaining to expert testimony apply with full force where law enforcement officials are called on to provide scientific, technical, or other specialized knowledge to the trier of fact." *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). The Second Circuit "ha[s] repeatedly upheld the use of expert testimony by government agents to describe the characteristics and operating methods of narcotics dealers." *Id.* The Circuit has held that "experienced narcotics agents may explain the use and meaning of codes and jargon developed by drug dealers to camouflage their activities." *Id.* "[S]uch agents" also may "offer their interpretations of any physical evidence that is properly before the jury." *Id.* at 233.

"At the same time, even where such testimony satisfies the applicable standards, the district court should not blindly admit the testimony without further consideration." *Id.* at 232 n.1. "The testimony may, under certain circumstances, raise issues that implicate concerns under rules of evidence other than Rule 702." *Id.* Courts also must be "cautious of the risk that dual police testimony may prejudice defendants at trial, both inflating an officer's expert opinions through his [or her] personal involvement in the case and bathing his [or her] lay testimony in the aura of expertise." *United States v. Willis*, 14 F.4th 170, 186 (2d Cir. 2021).

### B.    Inspector Hernandez Is Permitted to Testify Within a Limited Scope

Inspector Hernandez may testify "in general terms" about the functions of the alleged drug paraphernalia, the approximate street value of the cocaine sold during the charged sales, and the

meanings of coded terms in Defendant's text messages, insofar as those items have been admitted into evidence.  *Cf. id.* at 185–86 (affirming admission of expert testimony when "[t]he government asked whether items like 'whisks, sifters, and mixers have any role in narcotics trafficking,' and the witness confirmed that these were 'typical tools' of the trade," and also "testified that references to 'stamps' in text messages could refer to packaging for cocaine or heroin").  However, Inspector Hernandez may describe "the significance of language and physical evidence [only] in the abstract," and he may "dr[a]w no specific conclusions about the significance of that conduct or of the language in this particular case."  *See id.* at 186.  Further, as noted, Inspector Hernandez may not discuss evidence that has not been admitted, such as evidence related to uncharged transactions.  Nor may Inspector Hernandez "testify about the meaning of conversations in general, beyond the interpretation of code words" or "interpret ambiguous slang terms based on knowledge gained through involvement in the case, rather than by reference to the fixed meaning of those terms."  *See United States v. Mejia*, 545 F.3d 179, 192–93 (2d Cir. 2008).  Finally, Inspector Hernandez may testify "about the shortage of cocaine at the height of the pandemic[,] . . . to explain [Defendant's] text messages to UC102 in which [Defendant] references a 'drought' in the supply chain" (Gov. Supp. Br., Dkt. 90, at 8), only if Defendant references a "drought" in a text message that the Court has deemed admissible—*i.e.*, those that pertain to the charged transactions.

## VI.  Defendant's Cross-Examination Requests

### A.  Legal Standard – Impeachment

"Under Federal Rule of Evidence 608(b), the district court may restrict cross-examination about specific instances of [a witness's] prior conduct if it finds that the conduct is not probative of truthfulness."  *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002).  "Further, under Rule 403, the district court may exclude even relevant evidence if it finds that the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion of the

16

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* "[A] trial court has wide discretion to impose limitations on the cross-examination of witnesses . . . ." *United States v. Escalera*, 957 F.3d 122, 138 (2d Cir. 2020), *cert. denied sub nom. Cotto v. United States*, 141 S. Ct. 399 (2020).

### B.   Defense Counsel's Cross-Examination Requests Are Granted in Part and Denied in Part

First, defense counsel requests to cross-examine UC218 about allegedly inconsistent sworn statements in a prior criminal proceeding.   (*See* Defendant's Letter ("Def. Ltr."), Dkt. 88, at ECF 1–2.)   This cross-examination is permitted because it is potentially relevant to credibility and truthfulness.

Second, defense counsel requests to cross-examine UC102 about (1) her use of excessive force during a search she conducted in 2006, (2) her "incorrectly voucher[ing] drug evidence," and (3) a pending civil rights action in which she is a defendant.   (*See* Def. Ltr., Dkt. 88, at ECF 2–3.) None of this evidence (or questioning) is relevant to UC102's truthfulness or credibility.   UC102's use of excessive force occurred 15 years ago.   Further, this impeachment testimony would be unduly prejudicial.   Next, UC102's "incorrectly voucher[ing] drug evidence" is based on an accident and does not relate to her truthfulness or any allegation of purposeful misconduct.   Finally, in the pending civil rights action, there has been no finding of any wrongdoing, and mere allegations are irrelevant to truthfulness and unduly prejudicial.   Such unsubstantiated allegations are not proper subject matter for cross-examination.

Third, defense counsel requests to cross-examine Criminalist Michael Bozym about (1) analyzing—in 2011—a sample of marijuana that "contained less than the required weight of narcotic to satisfy NYS controlled substance statute," (2) not writing down the units of reported

weight in some reports between 2011 and 2013, and (3) using a testing machine in 2018 that "issued a 'value outside the normal range.'"  (*See* Def. Ltr., Dkt. 88, at ECF 3.)

The Court declines to allow cross-examination on these subjects.  That Criminalist Bozym analyzed a sample of marijuana that "contained less than the required weight" does not bear on his truthfulness or credibility, and has at most marginal bearing on his reliability.  In any event, this happened a decade ago, and likely would confuse and distract the jury.  The failure to write down units of reported weight, also almost a decade ago, is at best marginally probative and, similarly, likely would be confusing and distracting to the jury.  Finally, Defendant fails to explain whether the test-machine incident in 2018 implicated Criminalist Bozym's conduct in any way, and the confusion such testimony likely would generate outweighs any marginal potential impeachment value.

Fourth, defense counsel requests to cross-examine Criminalist Benjamin Torres about leaving "evidence" at his workbench, which was found the next day.  (*See* Def. Ltr., Dkt. 88, at ECF 3.)  This incident is trivial, irrelevant to this case, and likely would confuse and distract the jury.  The Court will not permit cross-examination on this subject.

Defendant relies on *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986), where the Supreme Court explained that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness."  (*See* Def. Ltr., Dkt. 88, at ECF 4 (quoting *Van Arsdall*, 475 U.S. at 680).)  But, as noted, the Court concludes that the prohibited cross-examination subject matter is not only irrelevant to credibility and truthfulness, but also is likely to confuse or distract the jury.

**CONCLUSION**

The parties' motions *in limine* are granted in part and denied in part. Using the Government's ordering, the Court summarizes below which exhibits are admissible and which are excluded:

| Exhibit | Description | Ruling | Explanation |
|---|---|---|---|
| 1. | Video dated March 27, 2020 | Admissible | No objection |
| 1A. | Excerpt of GX 1 | Admissible | No objection |
| 1B. | Still photo taken from GX 1 | Admissible | No objection |
| 1C. | Still photo taken from GX 1 | Admissible | No objection |
| 1D. | Still photo taken from GX 1 | Admissible | No objection |
| 2. | Video dated May 12, 2020 | Admissible | No objection |
| 2A. | Excerpt of GX 2 | Admissible | No objection |
| 2B. | Still photo taken from GX 2 | Admissible | No objection |
| 2C. | Still photo taken from GX 2 | Admissible | No objection |
| 2D. | Still photo taken from GX 2 | Admissible | No objection |
| 2E. | Still photo taken from GX 2 | Admissible | No objection |
| 3. | Video dated May 20, 2020 | Admissible | No objection |
| 3A. | Excerpt of GX 3 | Admissible | No objection |
| 3B. | Still photo taken from GX 3 | Admissible | No objection |
| 3C. | Still photo taken from GX 3 | Admissible | No objection |
| 3D. | Still photo taken from GX 3 | Admissible | No objection |
| 3E. | Still photo taken from GX 3 | Admissible | No objection |
| 4. | Photo of cocaine dated May 20, 2020 | Admissible | No objection |
| 5. | Photo of crack cocaine dated May 20, 2020 | Admissible | No objection |
| 6. | Text messages between Defendant and UC102 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 7. | A Google Maps image of the area surrounding 30-94 50 Street, Woodside, New York | Admissible | No objection |
| 8. | Narcotics sold to UC102 on March 27, 2020, invoiced #4000734748 | Admissible | No objection |
| 9. | Narcotics sold to CI 102 on March 27, 2020, invoiced #4000734745 | Admissible | No objection |
| 10. | Narcotics sold to UC102 on May 12, 2020, invoiced #4000741739 | Admissible | No objection |
| 11. | A glassine envelope of fentanyl and a scale with cocaine residue found in the | Admissible* | Ruling at PTC. *The Government shall not reference fentanyl. |

|  |  |  |  |
|---|---|---|---|
|  | defendant's apartment, invoiced #4000847471 |  |  |
| 12. | Narcotics sold to UC102 on May 20, 2020, invoiced #4000743731 | Admissible | No objection |
| 13. | NONE |  |  |
| 14. | One pink iPhone seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 15. | One blue digital scale seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 16. | One black scale with a CR logo seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 17. | One bag of purple and orange vials seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 18. | One bag of seven .38 caliber ammunition seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 19. | One Red Bull can with razor and Allen wrench seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 20. | One black backpack seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible |  |
| 21. | One green digital scale with 2 batteries seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 22. | One black and silver digital scale seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 23. | One black digital scale seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |

| 24. | One Coca Cola container seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
|---|---|---|---|
| 25. | Various zip bags of mixed sizes and colors seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 26. | One plastic bag with 2 clear zip bags of many yellow zips seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 27. | One large clear zip bag with many clear zip bags inside seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 28. | Zips of various sizes and colors seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 29. | Zips of various sizes and colors seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 30. | One vial with a blue top seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 31. | Two small black vials seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 32. | Three bags of orange vials seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 33. | Boxcutter and tweezer seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 34. | Pyrex measuring cup with nine .38 caliber ammunition, straw, and small | Excluded | Ruling at PTC |

| | | | |
|---|---|---|---|
| | razor inside seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | | |
| 35. | Shoebox of paperwork seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible* | Ruling at PTC. *Notebook and mail may be admitted, but the extent of this evidence will depend on what Defendant seeks to introduce/argue |
| 36. | One envelope addressed to Kaiam Donovan from the Department of Labor seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | No objection |
| 37. | One composition notebook seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible* | Ruling at PTC. *Notebook and mail may be admitted, but the extent of this evidence will depend on what Defendant seeks to introduce/argue |
| 38. | One composition notebook seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible* | Ruling at PTC. *Notebook and mail may be admitted, but the extent of this evidence will depend on what Defendant seeks to introduce/argue |
| 39. | An NYPD laboratory report with Laboratory # 2020-018973-2 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 40. | An NYPD laboratory report with Laboratory # 2020-018973-1 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 41. | An NYPD laboratory report with Laboratory # 2020-018974 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 42. | An NYPD laboratory report with Laboratory # 2020-024695-2 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 43. | An NYPD laboratory report with Laboratory # 2020-024695-1 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 44. | An NYPD laboratory report with Laboratory # 2020-026587-2 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |

| 45. | An NYPD laboratory report with Laboratory # 2020-026587-3 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
|---|---|---|---|
| 46. | An NYPD laboratory report with Laboratory # 2020-026587-1 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 47. | An NYPD laboratory report with Laboratory # 2021-040802 | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 48. | FBI diagram sketch of 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | No objection |
| 49. | A scanned envelope addressed to Kaiam Donovan from the New York Department of Labor seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | No objection |
| 50. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 51. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 52. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 53. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 54. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Admissible | Ruling at PTC |
| 55. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 56. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 57. | A photograph taken inside 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 58. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |

| 59. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
|---|---|---|---|
| 60. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 61. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 62. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 63. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 64. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 65. | A scanned page of rap lyrics seized from 50-6 31st Avenue, Apt. 1B, Woodside, New York | Excluded | Ruling at PTC |
| 66. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated April 18, 2021 | Admissible* | *With qualifications discussed above |
| 67. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated April 20, 2021 | Admissible* | *With qualifications discussed above |
| 68. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated April 22, 2021 | Admissible* | *With qualifications discussed above |
| 69. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated August 6, 2021 | Admissible | No objection |
| 70. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated August 9, 2021 | Admissible | No objection |
| 71. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated August 14, 2021 | Admissible | No objection |

| 72. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated August 19, 2021 | Admissible* | *With qualifications discussed above |
|---|---|---|---|
| 73. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated November 4, 2021 | Admissible | No objection |
| 74. | A recording of the defendant's phone call from the Metropolitan Detention Center in Brooklyn dated November 4, 2021 | Admissible | No objection |
| 75. | T-Mobile toll records | Admissible* | *Excluded to the extent this evidence concerns uncharged transactions |
| 76. | NONE | | |
| 76A. | T-Mobile records certification | Admissible | No objection |
| 76B. | Historical cell site data from T-Mobile | Admissible | No objection |
| 76C. | Historical cell site data from T-Mobile | Admissible | No objection |
| 76D. | Historical cell site data from T-Mobile | Admissible | No objection |
| 76E. | Historical cell site data from T-Mobile | Excluded | Ruling at PTC |
| 76F. | Historical cell site data from T-Mobile | Admissible | No objection |
| 77. | NONE | | |
| 77A. | T-Mobile records certification | Admissible | No objection |
| 77B. | Historical cell site data from T-Mobile | Admissible | No objection |
| 77C. | Historical cell site data from T-Mobile | Admissible | No objection |
| 78. | FBI CAST Historical Mobile Device Location Analysis of (646) 986-6649 | Admissible | No objection |
| 79. | NONE | | |
| 80. | Lobby camera footage from 50-6 31st Avenue, Woodside, New York dated May 12, 2020 | Admissible | No objection |
| 80A. | A photo of the defendant leaving his 50-6 31st Avenue, Woodside, New York lobby on May 12, 2020 | Admissible | No objection |
| 80B. | A photo of the defendant entering 50-6 31st Avenue, Woodside, New York lobby on May 12, 2020 | Admissible | No objection |

| 81. | Lobby camera footage from 50-6 31st Avenue, Woodside, New York dated May 20, 2020 | Admissible | No objection |
|---|---|---|---|
| 81A. | A photo of the defendant leaving 50-6 31st Avenue, Woodside, New York lobby on May 20, 2020 | Admissible | No objection |
| 81B. | A photo of the defendant leaving 50-6 31st Avenue, Woodside, New York lobby on May 20, 2020 | Admissible | No objection |
| 81C. | A photo of the defendant entering 50-6 31st Avenue, Woodside, New York lobby on May 20, 2020 | Admissible | No objection |
| 82. | NONE | | |
| 83. | A NYPD photo array including the Confidential Informant's signature | Withdrawn | The Government does not intend to introduce this affirmatively |
| 83R. | A redacted version of GX 83 | Admissible | No objection |
| 84. | A NYPD photo array including UC102's signature | Admissible | No objection |
| 85. | A summary page from a Cellbrite report conducted on the defendant's phone | Admissible | No objection |
| 86. | The contact list from a Cellbrite report conducted on the defendant's phone | Withdrawn | The Government does not intend to introduce this affirmatively |
| 87. | An excerpt of text messages between the defendant and "JO" | Excluded | Concerns uncharged transactions |
| 87R. | A redacted version of GX 87 | Excluded | Concerns uncharged transactions |
| 88. | A redacted version of GX 87 | Excluded | Concerns uncharged transactions |
| 89. | An excerpt of text messages between the defendant and "JO" | Excluded | Concerns uncharged transactions |
| 90. | A chart of text messages between the defendant and "Ev," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 91. | A chart of text messages between the defendant and "Gary," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 92. | A chart of text messages between the defendant and "Manny," taken from the Cellbrite report | Excluded | Concerns uncharged transactions |

| | | | |
|---|---|---|---|
| | conducted on the defendant's phone | | |
| 93. | A chart of text messages between the defendant and "WB Diamond," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 94. | A chart of text messages between the defendant and "Cristyle," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 95. | A chart of text messages between the defendant and "Duan," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 96. | A chart of text messages between the defendant and "Roro," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 97. | A chart of text messages between the defendant and "Sandi," taken from the Cellbrite report conducted on the defendant's phone | Excluded | Concerns uncharged transactions |
| 98. | A chart of text messages between the defendant and "WM," taken from the Cellbrite report conducted on the defendant's phone | Withdrawn* | *Assuming no entrapment defense |
| 99. | A certificate of disposition from the Bronx County Criminal Court pertaining to the defendant's arrest on November 8, 2011 | Withdrawn* | *Assuming no entrapment defense |
| 100. | A certificate of disposition from the Bronx County Criminal Court pertaining to the defendant's arrest on September 2, 2014 | Withdrawn* | *Assuming no entrapment defense |
| 100I. | An information from the Queens County Supreme Court pertaining to the defendant's arrest on February 18, 2002 | Withdrawn* | *Assuming no entrapment defense |
| 101. | A certificate of disposition from the Queens County Supreme Court | Withdrawn* | *Assuming no entrapment defense |

| | | | |
|---|---|---|---|
| | pertaining to the defendant's arrest on September 20, 2006 | | |
| 101I. | An information from the Queens County Supreme Court pertaining to the defendant's arrest on September 20, 2006 | Withdrawn* | *Assuming no entrapment defense |
| 102. | A certificate of disposition from the Queens County Criminal Court pertaining to the defendant's arrest on December 22, 2006 | Excluded* | *For impeachment only, if Defendant testifies, and depending on probative/prejudice determination |
| 103. | A certificate of disposition from the Queens County Supreme Court pertaining to the defendant's arrest on May 14, 2008 | Excluded* | *For impeachment only, if Defendant testifies, and depending on probative/prejudice determination |
| 103I. | An indictment from the Queens County Supreme Court pertaining to the defendant's arrest on May 14, 2008 | Excluded* | *For impeachment only, if Defendant testifies, and depending on probative/prejudice determination |
| 104. | A certificate of disposition from the Queens County Supreme Court pertaining to the defendant's arrest on December 31, 2012 | Excluded* | *For impeachment only, if Defendant testifies, and depending on probative/prejudice determination |
| 104I. | An indictment from the Queens County Supreme Court pertaining to the defendant's arrest on December 31, 2012 | Excluded* | *For impeachment only, if Defendant testifies, and depending on probative/prejudice determination |
| 105. | NYPD Chain of Custody form for Invoice # 4000734745 | Admissible | No objection |
| 106. | NYPD Chain of Custody form for Invoice # 4000734748 | Admissible | No objection |
| 107. | NYPD Chain of Custody form for Invoice # 4000735446 | Admissible | Ruling at PTC |
| 108. | NYPD Chain of Custody form for Invoice # 4000741739 | Admissible | No objection |
| 109. | NYPD Chain of Custody form for Invoice # 4000743731 | Admissible | No objection |
| 110. | NYPD Chain of Custody form for Invoice # 4000847471 | Admissible | No objection |
| 111. | A spreadsheet of toll records between the defendant and "JO" | Excluded | Concerns uncharged transactions |

| 112. | A spreadsheet of toll records between the defendant and "Sandi" | Excluded | Concerns uncharged transactions |
| 113. | A spreadsheet of toll records between the defendant and "WM" | Excluded | Concerns uncharged transactions |

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated:  December 22, 2021
       Brooklyn, New York